IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Samuel Lamont Whitner, | ) | C/A No. 8:16-cv-01392-CMC-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 15.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on April 28, 2016.[1] [Doc. 1-5.] On August 15, 2016, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 15, 16.] On August 16, 2016, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 17.] After moving for and receiving extensions of time, Petitioner's response in opposition was entered on the docket on December 1, 2016. [Doc. 26.] Respondent filed a reply on December 7, 2016. [Doc. 28.]

_____

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, Petitioner's action was filed on April 28, 2016. [Doc. 1-5 (envelope stamped indicating petition was received by prison mailroom on April 28, 2016).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## **BACKGROUND**

Petitioner is presently confined in the South Carolina Department of Corrections at Broad River Correctional Institution pursuant to orders of commitment of the Greenville County Clerk of Court. [Doc. 1 at 1.] In February 2009, Petitioner was indicted for criminal sexual conduct ("CSC") with a minor in the first degree. [App. 865.[2]] On March 11, 2009, represented by Christopher D. Scalzo ("Scalzo"), Petitioner proceeded to trial before the Honorable C. Victor Pyle, Jr. [App. 1–33.] During pre-trial motions, Judge Pyle granted Petitioner's motion to suppress an audio recording between Petitioner and the victim. [*Id.*] The State filed a notice of appeal and a motion to vacate the order in the South Carolina Court of Appeals, asserting that the trial judge lacked jurisdiction to review the admissibility of the audio recording under the South Carolina Homeland Security Act, S.C. Code § 17-30-10, *et seq.* (the "Wiretap Act"). [App. 35–39.] Chief Appellate Defender, Robert Dudek ("Dudek"), represented Petitioner on appeal. [App. 41–45.]

By Order dated June 11, 2009, and amended on June 15, 2009, the South Carolina Court of Appeals issued an order vacating Judge Pyle's order, finding that the circuit court lacked subject matter jurisdiction to rule on the motion to suppress, and remanding the action to the circuit court to allow filing of a proper motion. [App. 55–58.] Further, the South Carolina Court of Appeals ordered Petitioner to file a motion to suppress and scheduled the matter for hearing. [App. 58.] On July 2, 2009, Petitioner filed a motion to

---

[2] The Appendix can be found at Docket Entry Numbers 16-1 through 16-3.

suppress in the South Carolina Court of Appeals [App. 59–85], to which the State responded [App. 86–121] and Petitioner replied [App. 122–36].  On July 22, 2009, a three-judge panel of the South Carolina Court of Appeals conducted oral argument.  [App. 137–204.]  Petitioner was represented by Scalzo at the hearing.  [*Id.*]  By Order dated July 27, 2009, the South Carolina Court of Appeals denied Petitioner's motion to suppress. [App. 205–07.]  Proceedings then continued in the lower court.

Again represented by Scalzo, Petitioner's jury trial began on November 2, 2009, before the Honorable John C. Few.  [App. 208–655.]  On November 4, 2009, the jury returned a verdict of guilty.  [App. 640.]  Petitioner was subsequently sentenced to thirty years imprisonment.  [App. 653.]

**Direct Appeal**

Petitioner appealed his conviction.  Dudek again represented Petitioner on direct appeal.  Dudek filed a motion to certify the case to the Supreme Court of South Carolina from the South Carolina Court of Appeals, citing the Court of Appeals' prior order regarding the suppression of the recording issue.  [App. 16-4.]  On July 22, 2010, the Supreme Court of South Carolina granted Petitioner's motion.  [Doc. 16-5.]

Petitioner raised the following issues on appeal:

> 1.  The Court of Appeals erred when it ruled that the South Carolina legislature intended for the vicarious consent exception to be included in the South Carolina wiretap statute codified in S.C. Code § 17-30-10 *et seq.*

> 2.  The Court of Appeals erred when it ruled that the vicarious consent exception applied in this case without first finding that appellant's daughter, the minor child J.W., lacked the capacity to consent to having her private telephone conversation tape recorded.

3

3. The Court of Appeals erred when it ruled that the mother of appellant's daughter had an objectively reasonable basis for believing it was necessary to protect the best interest of the minor child by intercepting and recording her telephone conversation with appellant.

4. The Court of Appeals erred by not suppressing the intercepted telephone call between appellant and his daughter because the call was taped without appellant's knowledge or consent and, thus, it violated appellant's right to privacy under Article I, § 10 of the South Carolina Constitution.

5. The trial court erred by ruling that the videotaped forensic interview was admissible even if it was bolstering on the grounds that the statute providing for the videotape in a child sex case took precedence over the Rules of Evidence since the forensic interview impermissibly bolstered the child's testimony and it should have been excluded on that basis.

[App. 656–713.] The South Carolina Supreme Court affirmed Petitioner's conviction and sentence on July 11, 2012. [App. 765–83.] Remittitur was issued on July 27, 2012. [Doc. 16-6.]

## PCR Proceedings

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on February 8, 2013. [App. 784–89.] He raised the following two claims:

(a) Ineffective Assistance of Trial Counsel: Trial counsel acted jointly in concert with the state and illegally gain jurisdiction of the South Carolina court of appeals/6 amendment violation; and

(b) Ineffective Assistance of Appellant Counsel: Appellate counsel failed to challenge this jurisdictional defect.

[App. 786.] The State filed a return in October 2013, and an amended return in June 2014. [App. 790–94; Doc. 16-7.]

4

A hearing was held on June 19, 2014, and Petitioner was represented at the hearing by Caroline Horlbeck.  [App. 796–852.]  On August 12, 2014, the PCR court filed an order denying and dismissing the PCR application with prejudice.  [App. 853–61.]  Petitioner's PCR counsel did not move to alter or amend the judgment pursuant to Rule 59(e), S.C. R. Civ. P.  A notice of appeal was timely filed and served.  [App. 862–63.]

John Strom ("Strom") of the South Carolina Commission on Indigent Defense filed a *Johnson*[3] petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, dated May 15, 2015.  [Doc. 16-8.]  The petition asserted the following as the sole issue presented:

> Whether Petitioner's Sixth Amendment Rights were violated when trial counsel failed to object and move for a mistrial during closing argument where the State posited, in violation of the trial court's ruling on the matter, that Petitioner was predisposed to sexually abuse his daughter because Petitioner stated in a secretly recorded telephone conversation with his daughter that his father had sexually abused him as a child?

[*Id.* at 3.]  Strom also submitted a petition to be relieved as counsel.  [*Id.* at 17.]

Petitioner then filed a pro se petition, dated July 31, 2015, alleging the following issue:

> Did the circuit court err in holding that the trial counsel was not ineffective even though trial counsel failed to object when the State stopped the trial prior to the jury being sworn thus to move for an interlocutory appeal thus to preserve the record or appeal that the State lacked appealability under S.C. Code Ann. § 14-3-330 because the State failed to obtain an

---

[3]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief and effectively concedes the appeal lacks a meritorious claim.  *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

application under which the interception was authorized or approved?

[Doc. 16-12 at 3.]

The court denied the petition and granted counsel's request to withdraw on February 16, 2016 [Doc. 16-13], and remitted the matter to the lower court on March 8, 2016 [Doc. 16-14].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on April 28, 2016. [Doc. 1-5.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:** The Petitioner was denied due process of law under the fourteenth and fourth amendments to the U.S. Constitution when the prosecutor moved for an interlocutory appeal.
>
> *Supporting facts*: The Petitioner was without knowledge, had not consent to his private conversation with his daughter being recorded. The Petitioner's daughter's mother's "husband" had "secretly" taped the Petitioner's conversation without the Petitioner's knowledge or consent. The Solicitor was well "aware of this crime," S.C. code ann § 17-30-20 Authorization had not been granted to the Solicitor per a judge of competent jurisdiction S.C. code ann § 17-30-15 (8) to disclose the contents of the Petitioner's call in the trial proceeding with honorable Victor Pyle presiding 2009-GS-23-1072.
>
> **GROUND TWO**: The Petitioner was den[ied] due process of law under the 14th amendment equal

6

protection, due to the "obvolutional presence of an unlawful wiretap."

*Supporting facts*:    The Petitioner's confindment violates the constitution laws and treaties of the United States. The oringin of a violation was apparent before the South Carolina Court of Appeal. It was unequivocally clear that the violation had risen to a fundamental defect, and inherently resulted in a complete miscarriage of justice. The d[e]mands of fair procedure was impossible to meet, upon the South Carolina Court of Appeal was apprised per the South Carolina Attorney General that no order authorizing the interception was involved in this case See App. p. 50

**GROUND THREE**:    The Petitioner was denied his right to effective assistance of counsel under the 6 Amendment to the U.S.Const., by improperly perserving the record.

*Supporting facts*:    Trial counsel failed to apprise the Honorable C. Victor Pyle Jr, of the fact that the surreptitious taped conversation between the Petitioner and his daughter violates "S.C. Constitution Article 1 § 10," and "U.S. Constitution amendment 4." The Petitioner was not apprise that "his conversation," was going to be recorded by his daughter mother's husband. Moreso the state could not legally rely on the vicarious consent as expressed in *Pollock v. Pollock*, 154 F.3d 601, prior to an unlawful wiretap!!

**GROUND FOUR**:    Trial counsel ineffective upon not moving for a mistrial due to clear Prosecutorial misconduct; thus failing to admonish the court of double jeopardy

*Supporting facts*:    Trial counsel ineffective for not moving for a mistrial based on the Solicitor's willful misconduct in the Pre-trial proceeding,

7

which constituted egregious misconduct, when the solicitor violated S.C. code ann § 17-30-10 as well as the 5th and 6 Amendments to U.S. Constitution; thus failing to preserve for the record on appeal the prosecutorial misconduct could be considered, thus seen as "intentional" for the purpose of goading, before both the presiding Judges (i.e. The Honorable C. Victor Pyle Jr. and The Honorable John C. Few. 2009-GS-23-1072..

**GROUND FIVE**:     Appellate counsel failed to challenge the jurisdictional defect.

*Supporting facts*:     Appellate counsel ineffective by not challenging the Court of Appeal's jurisdiction thus to entertain the state's interlocutory appeal with respect to S.C. code § 17-30-110 (A), prior to the fact that the state could not and did not provide the required accompanying application under which said interception could have been or was authorized or approved, the Honorable C. Victor Pyle Jr., decree dening the state's attempts for admitting the surreptitious taped conversation did not provide an impeadment on the state's ability to prosecute....

**GROUND SIX**:     The Petitioner was deni[ed] due process of law under the 14th amendment equal protection, due to the Supreme Court Clerk of Court's endorsement is solely upon the February 16, 2016 order.

*Supporting facts*:     The February 16, 2016 order of dismissal which is endorsed solely by the South Carolina Supreme Court Clerk of Court, can not stand as lawfull per the South Carolina Supreme Court, which is violative with respect to the South Carolina Constitution Art. V § 5, and obstruct a necessity, which is for a "Justice", to provide a declaration of law,

8

> also upon the fact that requirement regarding application were in compliance when the Petitioner had timely submitted the pro se response to the Appellate Counsel's <u>Johnson Petition</u>.

[Doc. 1 at 5–13.]

As stated, on August 15, 2016, Respondent filed a motion for summary judgment. [Doc. 15.] On December 1, 2016, Petitioner filed a response in opposition [Doc. 26], to which Respondent filed a reply on December 7, 2016 [Doc. 28]. Accordingly, the motion for summary judgment is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

9

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ***Generally***

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)　(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)　(I) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)　An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest

13

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts

have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

16

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.   A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.   *Carrier*, 477 U.S. at 492.   To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## **DISCUSSION**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .  A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . .  It bears repeating that even a strong case for relief does not mean the state

18

court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

Here, Petitioner's claims relate primarily to the admission of an audio recording

between Petitioner and his daughter at trial. [Doc. 1.] The following relevant background

is taken directly from *State v. Whitner*, 399 S.C. 547, 550–52 (2012):

> [Petitioner] is the victim's biological father. According to the
> victim's testimony, when she was five or six years old,
> [Petitioner] exposed his penis to victim and forced her to
> perform oral sex on him twice.
>
> In 2007, when the victim was eleven years old, the victim
> disclosed the abuse to her mother (Mother). According to
> Mother, she encouraged the victim to confront [Petitioner]. The
> victim telephoned [Petitioner] to confront him, and he denied
> the incident. Mother subsequently informed her husband
> (Stepfather) about the abuse. The couple decided to record
> telephone calls between [Petitioner] and the victim. Several
> days later, Mother consented to Stepfather recording a
> telephone conversation between the victim and [Petitioner]
> without the victim's knowledge or consent. During the
> thirty-one-minute conversation, [Petitioner] admitted the sexual
> abuse and stated that the incident was a mistake he deeply
> regretted.
>
> Mother supplied the recording to law enforcement, and
> [Petitioner] was arrested and charged with CSC with a minor
> in the first degree. As part of the investigation, a forensic
> interview of the victim was conducted.
>
> [Petitioner] filed a motion to suppress the recorded telephone
> conversation, claiming the recording, intercepted without the
> prior consent of either party, violated the South Carolina

Homeland Security Act (Wiretap Act), S.C. Code Ann. § 17–30–10 et. seq. (Supp. 2010), which generally prohibits the interception of communications. A circuit court judge granted the motion to suppress.

The State filed an interlocutory appeal with the court of appeals and sought to vacate the trial court's suppression order pursuant to the Wiretap Act. The court of appeals correctly granted the State's motion to vacate and found that the trial court lacked subject matter jurisdiction because the Wiretap Act requires that a motion to suppress be made before a panel of judges of the court of appeals.

Thereafter, the court of appeals held a suppression hearing, including the taking of testimony and oral arguments. Stepfather testified that he believed recording the conversation would aid the parents in deciding the best course of action for the victim, including determining whether she needed sexual abuse counseling. Likewise, Mother testified she believed recording the conversations would be useful because she did not know what the conversations between the victim and [Petitioner] entailed, the victim was crying often, and she needed to determine if it was appropriate to permit [Petitioner] to have contact with the victim.

On the legal issue of consent, the court of appeals held that the Legislature, in enacting the Wiretap Act, intended to adopt the vicarious consent doctrine. Mother could, therefore, lawfully vicariously consent to the recording on behalf of the victim. On the factual matter, the court of appeals found that Mother had a good faith and objectively reasonable basis for believing the recording was necessary and in the victim's best interest, and it therefore denied [Petitioner]'s motion to suppress. The court of appeals sent the case back to the trial court.

At trial, the recording of the phone conversation between [Petitioner] and the victim was admitted, over [Petitioner]'s continuing objection. The State also introduced a videotape of the victim's forensic interview. The contents of the interview were similar to the underlying allegations the victim first disclosed to Mother and the testimony given by the victim at trial. The videotape was admitted over [Petitioner]'s objections of improper bolstering and hearsay. The jury convicted Petitioner of CSC with a minor in the first degree, and [Petitioner] was sentenced to prison.

20

**Procedurally Barred Claims**

   *Grounds One, Two and Six*

   In Ground One, Petitioner argues that he was denied due process in violation of the Fourth and Fourteenth Amendments, when the prosecutor moved for the interlocutory appeal. [*Id.* at 5.]  In Ground Two, Petitioner asserts that his due process rights were violated when the State permitted the "unlawful wiretap." [*Id.* at 7.]  In Ground Six, Petitioner alleges that he was denied due process in violation of the equal protection clause because only the Clerk of Court of the Supreme Court of South Carolina signed the Order denying the PCR Appeal Writ of Certiorari. [*Id.* at 13.]  The Court finds that these claims were not presented to the state courts and therefore are procedurally defaulted, and Petitioner has not shown sufficient cause to excuse the default.

   Grounds One and Two are procedurally barred as direct claims because Petitioner failed to raise these claims on appeal. [App. 656–713, 765–83.]  Ground Six is raised for the first time in the instant Petition.[5]  Because these grounds were not fairly presented to

---

   [5]Grounds One, Two, and Six are also not cognizable as federal habeas claims because they challenge state law errors or procedures. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") *See Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3rd Cir. 1997) (finding "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause").  Further, Petitioner's Ground Six asserts error in the PCR proceeding, which is not cognizable in this Court.  Petitioner's final claim involves issues related to the proceeding in which he collaterally attacked his conviction, rather than the proceedings that have culminated in his detention.  *See Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("A state prisoner has no federal constitutional right to post-conviction proceedings in state court. . . . Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself.") (citing

the state courts, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. at 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Five

In Ground Five, Petitioner argues that appellate counsel erred in failing to challenge the court of appeals' jurisdiction to entertain the interlocutory appeal of the motion to suppress. [*Id.* at 12.]

Petitioner raised Ground Five in his pro se PCR application. [App. 786.] The PCR court did not specifically address the matter. [App. 855–61.] Petitioner's PCR counsel failed to file a Rule 59(e) motion seeking a specific ruling on this issue form the PCR court. Consequently, Petitioner failed to fairly present his claim to the South Carolina courts and bypassed his state court remedies. Because this ground was not fairly presented to the state courts, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. at 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Cause and Prejudice

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez v.*

---

*Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)).

*Ryan*, 566 U.S. 1, 132 S.Ct. 1309 (2012) (holding that, in certain circumstances, ineffective assistance of counsel in an initial PCR proceeding can provide "cause" for not complying with state procedural rules regarding a claim of ineffective assistance at trial).

With respect to Grounds One, Two, and Six, Petitioner has failed to provide any argument to establish cause and prejudice. With respect to Petitioner's argument that he can show cause for the default of Ground Five because PCR counsel failed to file a Rule 59(e) motion, he is mistaken because PCR counsel's alleged deficiency relates to an issue of ineffective assistance of appellate counsel, not trial counsel. It has been generally held that *Martinez* does not apply to ineffective assistance of appellate counsel claims. *See Reed v. Stephens*, 739 F.3d 753, 778 n.16 (5th Cir. 2014) (declining to consider ineffective assistance of appellate counsel under *Martinez*); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "[u]nder *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) (holding *Martinez* applies only to procedural default of a claim of ineffective assistance at trial, not to claim of ineffective assistance of appellate counsel). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) (holding that *Martinez* applies where the underlying ineffective assistance of counsel is by appellate counsel). Because a *Martinez* analysis is not applicable to Petitioner's Ground Five, Petitioner has not demonstrated cause for the procedural default of this issue. Accordingly, because Petitioner has not shown sufficient cause and prejudice, or a fundamental miscarriage of justice, to overcome

his default in state court, the undersigned recommends that summary judgment be granted on Grounds One, Two, Five, and Six.

**Merits of Remaining Claims**

In Ground Three, Petitioner argues that trial counsel was ineffective for failing to properly preserve the record regarding use of the audio recording. [Doc. 1 at 8.] In Ground Four, Petitioner asserts that trial counsel was ineffective for failing to move for a mistrial based on the Solicitor's use of the recorded conversation. [*Id.* at 10.]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[6] *Richter*, 562 U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the

_____

[6]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court evaluated trial counsel's performance under the standard set forth in *Strickland.* [App. 855–60.] The PCR court found,

> The applicant states he was arrested because of a recorded telephone conversation between him and the victim. The Applicant stated this was illegal because he did not know he was being recorded. The Applicant stated trial counsel failed to obtain his telephone records. The Applicant stated trial counsel should have requested a mistrial (both before Judge Pyle and Judge Few) because the State knew the wiretap law had been violated. The Applicant stated trial counsel should have objected to the audiotape under the Fourth Amendment. The Applicant stated trial counsel should have argued prosecutorial misconduct because the State was not truthful in its motion to the Court of Appeals. The Applicant stated trial counsel did not argue adequate facts to the Court of Appeals to show the audio recording was illegal. The Applicant stated trial counsel did not object to the reference to the library book at the Court of Appeals. The Applicant stated he considered pleading guilty at trial but felt pressured and that he could not do so.

> Trial counsel testified he filed discovery motions and received those materials (including audio recordings of telephone calls). Trial counsel testified he reviewed those materials with the Applicant, who explained his side of the story. Trial counsel testified he did not recall the Applicant asking him to obtain telephone records and said there were no

25

such subpoenas in his file. Regardless, trial counsel testified he did not believe he would have needed those records. Trial counsel testified he did not know how he could have moved for a mistrial when the case was before Judge Pyle. Trial counsel testified there was no basis to move to mistrial when the case was before Judge Few because the Court of Appeals had already ruled upon the wiretap issue. Trial counsel testified he discussed the suppression motion with the Applicant and that the basis for the motion was a technical legal issue. Trial counsel testified he argued neither the Applicant nor the victim consented to the telephone calls being recorded. Trial counsel testified the biggest issue in the case was the potential suppression of the audio recordings. Trial counsel testified that, once the Court of Appeals ruled against him, he could not re-litigate this issue. Trial counsel testified they were aware of the issue with the library book before the case was first brought before Judge Pyle. Trial counsel testified there were plea negotiations throughout the appeal process to the Court of Appeals, that he relayed those negotiations to the Applicant, and that the Applicant rejected them and went to trial. Trial counsel testified the Applicant spoke of pleading guilty during the victim's testimony and that this was a normal reaction. Trial counsel testified he spoke to the assistant solicitor at that point but could not recall whether there was a specific offer.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not make proper arguments in challenging the legality of the recorded telephone calls. The Applicant's complaints are centered around his belief that the recordings of his telephone calls with the victim were illegally obtained and inadmissible. Trial counsel moved to suppress these recordings, arguing neither the Applicant nor the victim consented to being recorded. The Court of Appeals, however, presided over the suppression hearing and found that—through the doctrine of vicarious consent—the victim's mother consented to the recording on her daughter's behalf. Trial counsel testified he did not know what else he could have argued with regard to this issue. This Court notes trial counsel is an experienced criminal defense lawyer who expertly argued this legal issue. The Applicant has failed to demonstrate what else trial counsel could have argued that would have led to a different result. *See, e.g., Skeen v. State*, 325 S.C. 210, 481 S.E.2d 129 (1997) holding applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at

26

trial). This Court finds the Applicant failed to meet his burden of proving trial counsel should have moved for mistrial before both Judge Pyle and Judge Few.  The Applicant, furthermore, has failed to "show error and resulting prejudice."  *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000).  As the Applicant failed to articulate a legal error that would support the granting of a mistrial in this case, he cannot prevail on this issue.

*** 

This Court finds the Applicant failed to meet his burden of proving there was prosecutorial misconduct. [ ] "[T]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have been prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 103 (4th Cir. 1990). In order to establish prejudicial misconduct on the part of the prosecutor the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180–81, 106 S. Ct. 2464, 2471 (1986) (quotation omitted).  While the Applicant argued there was prosecutorial misconduct in his case because the State was not truthful in its representations to the Court of Appeals, this Court finds this allegation is unfounded.  This Court finds this allegation is without merit, as the Applicant has failed to articulate either improper conduct or any resulting prejudice.

*** 

Accordingly, this Court finds the Applicant has failed to prove the first prong of the *Strickland* test—that trial counsel failed to render reasonably effective assistance under prevailing norms.  The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant.  This Court also finds the Applicant has failed to prove the second prong of *Strickland*—that he was prejudiced by trial counsel's performance.  This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance.  *See Frasier v. State*, 351 S.C. at 389, 570 S.E.2d at 174.

[App. 855–61.]

The facts supporting the PCR court's reasoning are well-founded in the testimony at trial and at the PCR hearing. As is evident by the record, trial counsel sought rigorously to suppress the audio recording. [App. 17–23.] Indeed, Judge Pyle granted counsel's motion to suppress. [App. 23.] Over counsel's strenuous objections, made in his memorandum in support of the motion to suppress [App. 61–85] and during the Wiretap Suppression Hearing before the three-member appellate panel [App. 137–204], the appellate court ruled against Petitioner [App. 205–07].

Further, to the extent Petitioner argues that trial counsel was ineffective for failing to move for a mistrial based on prosecutorial misconduct, his claim cannot succeed. The PCR court considered Petitioner's arguments on prosecutorial misconduct and that trial counsel should have moved for a mistrial. Based on a review of the trial transcript and PCR transcript, the undersigned finds that the PCR court's decision on this ineffective-assistance-of-counsel issue was reasonable. The PCR court found that Petitioner failed to meet his burden of proving prosecutorial misconduct or that trial counsel should have moved for a mistrial. As stated, trial counsel vigorously fought to keep the audio recording from being admitted at trial. The undersigned agrees with the PCR court's finding that Petitioner failed to prove prosecutorial misconduct, nor did trial counsel err in failing to move for a mistrial.

This Court cannot find the PCR court's decision to be an unreasonable determination—i.e., a determination based on error evident "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Because Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application

of applicable Supreme Court precedent, Petitioner is not entitled to habeas corpus relief based on Grounds Three and Four.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment [Doc. 15] be GRANTED and the Petition [Doc. 1] be DENIED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 30, 2017
Greenville, South Carolina